Good morning everyone. It's a pleasure for us to be here in Alaska and it's a beautiful state. Just wish the skies were a little bit bluer. I'm gonna call the cases just as they appear on the calendar and we'll start with number one United States of America v. Vernon Good morning. My name is Glenda Carey and I'm here on behalf of Mr. Lonnie Vernon. There are two issues presented in this appeal. The first is whether Mr. Vernon waived his right to appeal based on the involuntariness of his plea and the second is whether his plea was in fact involuntarily rendered. So they're really the same issue are they not? They both turn on the same set of facts, in other words isn't the question whether his plea was voluntary? Yes. The government has raised the issue as whether or not he waived that right. Right, but if he does have a plea waiver so if he voluntarily entered into a plea waiver then we should be dismissing the appeal. If his plea was involuntary then we probably should not be. So it's still the same question right? There are two separate questions. It's the same set of facts. I think it's a fine line. But I divided them into two just to quickly address the first whether or not he waived his right. The government was the drafters of the plea agreement and as such they bear the burden of any lack of clarity in the agreement and at most there's a minor lack of clarity with regard to this one the defendant will waive all rights to appeal the conviction and sentence imposed under this agreement and will waive all rights to collaterally attack the conviction and sentence except on the grounds of ineffective assistance of counsel or the voluntariness of the plea. What's ambiguous about that? Well the government provision only applies to the second part which is the collaterally attack. But I submit that that except provision provides to the whole paragraph, the whole sentence. And there's three reasons why the government's position doesn't make any sense at all. One is just on public policy grounds. The voluntariness of a plea is not something that can be waived up front before it is entered. It doesn't make sense to ahead of time agree that my plea was voluntary when you haven't. Let me get back to the question I asked you before, which is what difference does it make if you're here and you're claiming that the plea agreement was involuntarily entered into. We're hearing that argument. If you convince us that the plea agreement was involuntarily entered into, then you're entitled to relief. If you're not, then you're not entitled to relief. So it really doesn't matter under which theory. Tell me why we should conclude that the plea agreement was involuntarily entered into. Primarily because there's evidence of incompetence. And the Moran v. Godinez is the case which sets out the court's duty to sua sponte, question the defendant when there's an issue as to his competence. You read the whole transcript of the change of plea hearing. There are parts and bits and pieces of his statements to the court during the colloquy that indicate that he was a pretty strong believer in his political views. He's a sovereign citizen. But other than that, what is the other evidence that, what took place during the course of the hearing that suggests that he was mentally, was unable to understand the proceedings? The district court himself stated that, quote, your questions indicate to me that you don't understand how our legal system works in this system and how it goes along. So the court itself was concerned that Mr. Vernon was not understanding what was happening. He made statements such Counsel, is that all the court said? Didn't he go on to explain and clarify to make sure that Vernon understood? Well, but that's, I suspect, true of almost everybody you represent. It certainly was true of almost everybody I represented. Under your view of this, can a so-called sovereign citizen ever be competent to plea? Given this guy's views of the world, which is that the federal courts had no jurisdiction over him and the judge had to produce a written affidavit from someone to somebody, could any sovereign citizen ever plead guilty? I'm not basing my argument based on the sovereign citizen. Well, but you are, because you're basing your argument on his lack of understanding of the federal, of the criminal justice system. And his view of the criminal justice system is, it doesn't apply to me. Correct. But I think a bigger part of my argument is what the court was required to do once he was, once Mr. Vernon informed him that he was being deprived of his medications. That imposed a duty on the court to inquire as to what medications and how did they affect his competency. And what case do you base that on? Moran versus Godinez. In that case, wasn't there some evidence that the absence of the medications affected medical competence? Here, the absence of the medications may have affected his health. He was taking medications, as I understand it, for some sort of blood poisoning. But there's no evidence that the absence of the medications affected his ability to understand the proceedings. I would disagree because the court didn't inquire as to what medications. Just like in the Moran case, the court didn't inquire into what medications he was taking and what, how they affected his ability to understand the proceedings. Here, the court also didn't inquire. It's the flip reverse because he was being deprived of them, but we don't know. It's only speculation that it was just the, related to the poisoning that he had received. Can I come back to the structure of this plea agreement? The language seems pretty clear that the two clauses are independent. The defendant will waive all rights to appeal and sentence imposed and will waive all rights to collaterally attack the conviction and sentence except on the grounds of ineffective assistance or the voluntariness of the plea. So, except with me, the concept that the plea agreement on its face is not ambiguous, why wouldn't it be logical to say, okay, he'll waive his rights to appeal on direct, but he doesn't waive on collateral review so that the issues, because isn't it true on a collateral review, there might be opportunity for evidentiary hearing and the like and therefore the allegations that you're making could be more properly presented? Yes, it's true. On collateral review, there is the opportunity to attack this. However, the voluntariness of a plea can only be attacked on collateral review if it was first attacked on direct review. And U.S. v. Kaczynski is the case for that. So he had to appeal the voluntariness of his plea in order to even get into court on the collateral review for that issue. So that's another reason why the government's position doesn't make any sense. And the third reason that it doesn't make any sense is because another part of the agreement was that if Vernon withdrew his plea, he agreed that the facts admitted could be used against him in a new trial. So there's another provision saying we acknowledge you have the right to withdraw your plea. Well, he has the right to withdraw his plea. Well, he has the ability to try to withdraw his plea. The judge in this case could have allowed him to withdraw his plea. He chose not to. When he made an attempt to withdraw, he notified the court that he wanted to withdraw his plea, correct? And then when he showed up, he said he really didn't want to withdraw his plea. His attorney notified the court that he did, and I submit that that suggests some irrational behavior. But then you cannot read that sentencing hearing without saying that this is a clear attempt for him to withdraw his plea and to withdraw everything. Except the judge asks him rather straight on whether, at least at the plea hearing, do you want to withdraw this plea? And he says no, because there's substantial benefits to this plea. His wife benefits from the plea. A bunch of charges against him were dropped. You could argue whether or not you would have taken it had you been in their position, but there are benefits that are accrued from this plea. I agree, but that's not the issue. He does say in the hearing, no, I want the plea because I understand that my wife benefits from it. You're almost out of time. Would you like to save a minute for rebuttal? Okay, I'll give you a minute. Thank you. Good morning, and welcome to Anchorage. Yes, thank you. Good to be here. May it please the court, my name is Yvonne Lamore, and I'm here on behalf of the United States of America. I'm with the U.S. Attorney's Office here in Anchorage. Regarding the last point that was being discussed regarding the benefits of the plea agreement, it's clear that there were a number of benefits obtained by Lonnie Vernon. It was a voluntary and intelligent choice among the alternative courses of action here. He was really facing a life sentence with his age, no matter what he pleaded to, was he not? He was 57 at the time of sentencing. And facing something like 12 or 13 or 14 years. The parties agreed to a sentencing range, a binding range, in this case of between 262 and 327 months. What would he have faced on the first case, the charges in which he was convicted after trial, in the absence of the second one? That was also the guideline range in the first case, case 22. And as part of the plea agreement in the second case, case 28, as the court mentioned, the United States dismissed a number of counts, including one 924C count that carried with it a mandatory consecutive term of 30 years. That would have been a life sentence. Hopefully 70 is not a life sentence. But let me ask you, what's a district judge supposed to do under circumstances like this? If you read this transcript, you can see that the judge is having a very difficult time because the defendant wants to give speeches. But the judge is obligated to make sure that the plea is voluntary and that the defendant understands it. What's a judge supposed to do here? Exactly what Judge Bryan did here. Senior United States District Court Robert Bryan from the Western District of Washington presided over both of these cases. He heard the suppression and pretrial motions hearings in January of 2012, where he heard Lonnie Vernon's post-arrest interview recordings, the statements of those, recordings of those statements. He presided over the six-week trial where he heard numerous hours and other evidence admitted during the course of that trial of Lonnie Vernon's recorded conversations. He was well aware of the sovereign citizen beliefs that were held not just by Lonnie Vernon, but the co-defendants as well. The judge gives Mr. Vernon plenty of time to talk, and he does. He takes advantage of plenty of time to talk. I guess my question is, in terms of making a record for appellate review, if we were to give judges instructions in cases like this, what should we tell them? Should we tell them there's a point in time where the defendant just has to be quiet and answer questions yes or no? We can't do that. But what makes this record hard is the judge asks a direct question, and he gets a 25-minute disquisition in return. How do we... At the end of the change of plea hearing, Judge Bryan stated on the record that it appears to him, to me, that both defendants are competent and capable of entering an informed plea. They understand the nature of the charges and the consequences of their plea. There's a knowing and voluntary basis presented by the defendants, which contains each of the essential elements of the offense charged in count one of the superseding indictment. The pleas are knowing and voluntary, and they should be accepted. And so now I will make a finding that both parties are guilty of count one of the superseding indictment, and the plea agreements appear at this point to me to be fair and reasonable under all the circumstances. Those are conclusions, so I appreciate your reciting those. I think Judge Hurwitz is saying, how do we help the district judges make the record to underscore or support those conclusions? But what I'd like to have you address is the question I posed to counsel for Mr. Vernon, which is the logic of the structure of the plea agreement. One, assuming that there are two independent clauses, the direct appeal and the collateral appeal. She argued that the second right to collaterally attack the plea agreement on its voluntariness was pointless because without the right to direct appeal, she wouldn't have laid the foundation for a collateral attack. That's what I understand you to say. Could you respond to that? The government disagrees with that position. It is clear that all guilty pleas must be knowing and voluntary and taken in compliance with the Rule 11 requirements. But there is no requirement that a challenge to the voluntariness of the plea. For example, when defendants have claims that their guilty pleas were the result of a threat or a promise or some other kind of deceit, the record normally isn't fully developed during the change of plea hearing for the court to hear those matters on direct appeal. Those can be challenged directly in a 2255 collateral attack, and there's no requirement that those first must be raised in a direct appeal. Okay, so counsel and Mr. Vernon could have been making the arguments about medications and lack of understanding on a collateral attack and to the extent that there was some question about the nature of the medications and the effect they may have had. That would be open for a 2255. Yes, Your Honor. In addition, I believe that the case that the appellant was relying on was the Supreme Court case in Bowsley. In that case, the challenge was truly whether it was a knowing or an intelligent guilty plea. And in that case, the court can hear that on the direct appeal. But can't a defendant on direct appeal attack the voluntariness of the appeal waiver? Absolutely. And that's in effect what Vernon is doing here, right? He's claiming that it wasn't knowing. Right. And I take it, and that's what I tried to ask your opponent, I take it Vernon's argument on appeal is the same argument with respect to the voluntariness of the plea. Exactly. And there is nothing, there is no evidence in this record that Lonnie Vernon suffered from any kind of mental disease or defect, or that mental disease or defect somehow caused an inability to understand the proceedings. During the course of the trial in the prior case, was there ever any hint or any suggestion that his mental competency should be evaluated? None at all. How long did that trial last? It was a six-week trial. And how soon after the trial did the plea follow? It was two months later. The jury's verdict came in on June 18, 2012, and it was on August 27, 2012, that Lonnie Vernon pled guilty in the second case, case 28. Can the judge base his finding of competence on his previous interactions with the defendant? Absolutely. The court looks at his entire history with this defendant. In addition, the court inquired of defense counsel. The same defense counsel represented Lonnie Vernon in both cases and had numerous opportunities to observe Lonnie Vernon during the course of that representation. And always, when the court asked defense counsel whether she thought that Lonnie Vernon fully understood his rights and the nature of the proceedings, she answered affirmatively. I also would like to address, at one point, there was a suggestion that there was a motion to withdraw the guilty plea. There was never a motion to withdraw the guilty plea. There was a communication by his counsel, wasn't there, to the court? There was some kind of communication in a separate hearing following the change of plea hearing. Her counsel said, I understand that Mr. Vernon would like to withdraw his plea, and then the court addressed him and he said, no, I don't. Exactly. Lonnie Vernon said, I'm not withdrawing my plea. I don't want to withdraw my plea. And there was never a motion to withdraw his guilty plea. It is clear that Lonnie Vernon was angry during the course of these proceedings, but his anger and his comments regarding his sovereign citizen beliefs were not an indication that he didn't understand the proceedings or was not competent. He clearly and knowingly agreed that he waived his appeal rights and his appeal waiver should be upheld here. Thank you. Thank you. To address the question, what is the court supposed to do, the court is supposed to have a competency hearing when it's presented with a situation like this. Whenever a reasonable judge would be expected to have a bona fide doubt as to the defendant's competence, due process requires the court to conduct a competency hearing sua sponte. And so that addresses that. The case that I rely on for the argument that the voluntariness of the plea can only be attacked on collateral review if it was first addressed on a direct review is U.S.V. Kaczynski, 239 F3D 1108, page 1114. Kaczynski or Kozynski? K, K-A. That's what I thought. Because Kozynski has less appeal to us. And I think it's important to remember that by the status hearing that happened a month after the change of plea as well as the sentencing, Mr. Vernon wasn't even speaking to his attorneys and the court was informed of that. And so he really wasn't being represented. At the sentencing hearing the attorneys had nothing to say. And so communications had broken down and I think that that indicates a further level of, you know, that the court should have inquired. Is there a separate appeal pending in the first case? No, part of this... Because it was waived. Correct, but that's why... Because the package deal, everything was combined together. Right. And so part of what you're attempting to accomplish here is to get him back his appeal rights in the first case. Exactly, exactly. I was just trying to figure that out because otherwise it makes... there's not much to be gained by it. Right. Okay. Yeah, that's my tack on this was that first we must get this plea withdrawn and then our appellate rights in the other case are renewed. Right. Restored. Reinstated. Reinstated. Thank you. Okay, thank you, counsel. We appreciate your arguments. The matter is submitted.
judges: Fisher, Paez, Hurwitz